**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **BLUE SPIKE, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | JURY TRIAL DEMANDED |
| | § | |
| **TOSHIBA AMERICA** | § | |
| **INFORMATION SYSTEMS, INC. &** | § | |
| **TOSHIBA CORPORATION** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

---

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT



Plaintiff Blue Spike, LLC files this complaint against Defendant Toshiba America Information Systems, Inc. and Toshiba Corporation (collectively, "Toshiba" or "Defendant") alleging twenty-four (24) counts of infringement of the following Patents-in-Suit, separated for convenience into four groups: (1) Blue Spike's Packet Transfer Patents; (2) Blue Spike's Watermarking Patents; (3) Blue Spike's Secure Server Patents; and (4) Blue Spike's Trusted Transaction Patents:

**Blue Spike's Packet Transfer Patents:**

1.      U.S. Patent No. 7,287,275, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '275 Patent);

2.      U.S. Patent No. 8,473,746, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '746 Patent);

3.      U.S. Patent No. 8,706,570, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '570 Patent);

4.      Reissued U.S. Patent No. RE44,222, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '222 Patent);

5.      Reissued U.S. Patent No. RE44,307, titled "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth" (the '307 Patent, and collectively with U.S. Patent Nos. 7,287,275, 8,473,746, 8,706,570, RE44,222, and RE44,307, the "Packet Transfer Patents");

**Blue Spike's Watermarking Patents**:

6.      U.S. Patent No. 5,889,868, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '868 Patent);

7.      U.S. Patent No. 7,095,874, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '874 Patent);

8.      U.S. Patent No. 7,409,073, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '073 Patent);

9.      U.S. Patent No. 7,647,502, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '502 Patent);

10.     U.S. Patent No. 7,770,017, titled "Method and System for Digital Watermarking" (the '017 Patent);

11.     U.S. Patent No. 7,779,261, titled "Method and System for Digital Watermarking" (the '261 Patent);

12.     U.S. Patent No. 7,913,087, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '087 Patent);

13.     U.S. Patent No. 7,953,981, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '981 Patent);

14.     U.S. Patent No. 7,987,371, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '371 Patent);

15.     U.S. Patent No. 7,991,188, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '188 Patent);

16.     U.S. Patent No. 8,121,343, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '343 Patent);

17.     U.S. Patent No. 8,161,286, titled "Method and System for Digital Watermarking" (the '286 Patent);

18.     U.S. Patent No. 8,175,330, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '330 Patent);

19.     U.S. Patent No. 8,307,213, titled "Method and System for Digital Watermarking" (the '213 Patent, and collectively with U.S. Patent Nos. 5,889,868, 7,095,874, 7,409,073, 7,647,502, 7,770,017, 7,779,261, 7,913,087, 7,953,981, 7,987,371, 7,991,188, 8,121,343, 8,161,286, and 8,175,330, the "Watermarking Patents");

**Blue Spike's Secure Server Patents:**

20.     U.S. Patent No. 7,475,246, titled "Secure Personal Content Server" (the '246 Patent);

21.     U.S. Patent No. 8,171,561, titled "Secure Personal Content Server" (the '561 Patent);

22.     U.S. Patent No. 8,739,295, titled "Secure Personal Content Server" (the '295 Patent, and collectively with U.S. Patent Nos. 7,475,246 and 8,171,561, the "Secure Server Patents");

**Blue Spike's Trusted Transactions Patents:**

23.     U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent); and

24.     U.S. Patent No. 8,538,011, titled "Systems, Methods and Devices for Trusted Transactions" (the '011 Patent, and collectively with U.S. Patent 7,159,116, the "Trusted Transactions Patents").

## NATURE OF THE SUIT

1.     This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.     Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in them, including the rights to grant sublicenses, to exclude

others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

3.      On information and belief, Toshiba America Information Systems, Inc. is a company organized and existing under the laws of California, with a principal place of business at 9740 Irvine Blvd., Irvine, CA 92618.  Toshiba America Information Systems, Inc. may be served through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

4.      On information and belief, Toshiba Corporation is a company organized and existing under the laws of Japan, with a principal place of business at 1 Chome-1-1 Shibaura, Minato, Tokyo 105-0023, Japan. Toshiba Corporation can be served via its U.S. subsidiary, Toshiba America, Inc.

## JURISDICTION AND VENUE

5.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

6.     The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and

continuous contacts with the District and should reasonably expect to be haled into court here.

7.    Specifically, Defendant operates a website that solicits sales of the Accused Products by consumers in this District and Texas (*see* Exhibits A); Defendant operates numerous offices in Texas and the United States (*see* Exhibit B); Defendant has partnered with resellers and distributors in this District and Texas to sell the Accused Products (*see* Exhibits C, D, E, M & N); Defendant offers telephonic and electronic support services to customers in this District and Texas (*see* Exhibits F & G); Defendant has used the Court system in Texas for its benefit numerous times; and Defendant has a registered agent for service in Texas (*see* above). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

8.    Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

9.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant does business in the State of Texas, has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.  *See Luci Bags LLC v. Younique*, LLC, No. 4:16-CV-00377, 2017 WL 77943, at *3 (E.D. Tex. Jan. 9, 2017) ("For venue purposes, a defendant entity is deemed to reside in any judicial district where it would be subject to the court's personal jurisdiction with respect to the civil action in question.") (*citing* 28 U.S.C. § 1391(c)(2)).

**FACTUAL BACKGROUND**

10.     Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

11.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

12.     Moskowitz is an inventor of more than 100 patents, in the areas of forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software, and bandwidth securitization, among others.

13.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

14.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in

this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

15.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

16.     Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS

17.     Defendant designs, develops, manufactures and/or provides products, services and/or software applications that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products").

18.     The Accused Products are comprised of the Accused Watermarking Products, the Accused Secure Server Products, and the Accused Trusted Transactions Products.

19.     The Accused Watermarking Products include, but are not limited to, Defendant's VIPedge™ products and services.

20.     The Accused Watermarking Products infringe the Packet Transfer Patents and the Watermarking Patents.

21.     The Accused Secure Server Products include Toshiba smart televisions sold prior to January 1, 2015 in the United States capable of streaming secured content such as Netflix, YouTube, Google Play, HBO Go, Fox Now, and others. Such products include, but are not limited to, Toshiba's L22, L42, L52, and L62 series of televisions.

22.     The Accused Secure Server Products infringe the Secure Server Patents.

23.     The Accused Trusted Transactions Products include the Secure Server Products as well as Toshiba Tecra laptops, including but not limited to these series A40, A50, C40, C50, Z40, and Z50 series, and Portégé laptops, including but not limited to these series A30, WT20, Z20t and Z30 series, all having Toshiba's Trusted Platform Module (TPM).

24.     The Accused Trusted Transactions Products infringe the Trusted Transactions Patents.

25.     Defendant has not obtained a license for any of Blue Spike's patented technologies.

26.     Yet the Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

27.     Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012)

("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

**COUNT 1:**

**INFRINGEMENT OF U.S. PATENT 7,287,275**

28.   Blue Spike incorporates by reference the allegations in the paragraphs above.

29.   The '275 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

30.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '275 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

31.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '275 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

32.   The Accused Watermarking Products infringe claims of the '275 Patent, such as Claim 1 which teaches

A method for transmitting a stream of data, comprising:
    receiving a stream of data;
    organizing the stream of data into a plurality of packets;
    generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets;
    combining the packet watermark with each of the plurality of packets to form watermarked packets; and
    transmitting at least one of the watermarked packets across a network.

Defendant's Accused Watermarking Products comprise a VoIP phone system, which transmits data in packets (*a method for transmitting a stream of data, organizing the stream of data into a plurality of packets*). *See*, *e.g.*, Exhibit A. The Accused Products utilize traffic shaping, which marks the packets with different priorities prior to transmission (*generating a watermark associated with the stream of data wherein the packet watermark enables identification; combining the packet watermark with each of the plurality of packets to form watermarked packets; transmitting at least one of the watermarking packets across a network*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

33.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '275 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '275 Patent. Such products include, without limitation, one or more

of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '275 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '275 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '275 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '275 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '275 Patent under 35 U.S.C. § 271.

34.    Defendant's acts of infringement of the '275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'275 Patent will continue to damage Blue Spike, causing it irreparable harm, for which

there is no adequate remedy at law, warranting an injunction from the Court.

35.    On information and belief, the infringement of the '275 Patent by Defendant has

been willful and continues to be willful. Defendant had knowledge of the '275 Patent,

including but not limited to at least one or more of the following:

  a.    In the course of its due diligence and freedom to operate analysis;

  b.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No.
        6:16-cv-271-RWS-JDL; and

  c.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '275

Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT 8,473,746

36.    Blue Spike incorporates by reference the allegations in the paragraphs above.

37.    The '746 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

38.    Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '746 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

39.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '746 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '746 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

40.     The Accused Watermarking Products infringe claims of the '746 Patent, such as Claim 9 which teaches

> A method for generating a watermarked packet, comprising:
> a processor applying an algorithm to at least (1) a packet watermark and (2) packet content, thereby generating a WID (Watermark Identification);
> wherein said packet content is less than all data of a data object;
> a processor generating a watermarked packet comprising said packet watermark and at least some of said packet content.

The Accused Watermarking Products generate a watermark identifying a packet and place the watermark in the packet (*generating a watermark associated with the stream of data wherein the packet watermark enables identification; combining the packet watermark with each of the plurality of packets to form watermarked packets*). *See* Exhibit A. The Accused Watermarking Products apply a traffic-shaping algorithm to packets to determine their priority (*applying an algorithm to packet content*; *apply an algorithm to a watermark*; *generating a WID* (*Watermark Identification*)). *See* Exhibit F

at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

41.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '746 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '746 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '746 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '746 Patent at least as early as

the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '746 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '746 Patent under 35 U.S.C. § 271.

42.    Defendant's acts of infringement of the '746 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '746 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

43.    On information and belief, the infringement of the '746 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '746 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to its prior litigation with Blue Spike; and

c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '746 Patent by operation of law.

## COUNT 3:

## INFRINGEMENT OF U.S. PATENT 8,706,570

44.     Blue Spike incorporates by reference the allegations in the paragraphs above.

45.     The '570 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

46.     Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '570 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

47.     Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '570 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '570 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking

Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the

Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said

resellers.

48.     The Accused Watermarking Products infringe claims of the '570 Patent, such as

Claim 1 which teaches

> A computerized system for creating a medium of
> exchange, the system comprising:
>     a processor;
>     at least one data storage medium for storing data in
>         non transient form, wherein data stored in said at

least one data storage medium comprises computer
code and a bandwidth rights certificate;

wherein said bandwidth rights certificate stores
routing information comprising (1) router data,
wherein said router data comprises at least
authorization indicating authorization for at least
one router and priority data indicating priority for at
least one router and (2) certificate validity period;

wherein said computerized system is designed to use
said computer code to organize data into packets;

wherein said computerized system is designed to use
said computer code to combine said bandwidth
rights certificate and said packets into a data
transmission, for transmission across a network;

a router, wherein said router is configured to use
certificate validity period of said bandwidth rights
certificate to determine whether to use said router
data to determine at least one of whether to route
said data transmission and how to prioritize routing
said data transmission.

The Accused Watermarking Products employ traffic-shaping to assign bandwidth rights
or priorities to packets and send both across a network (*a bandwidth rights certificate*;
*router data comprising at least authorization indicating authorization for at least one
router and priority data*; *determine how to prioritize routing said data*). *See* Exhibit A,
Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time");
Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth
management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

49.   Defendant has been and now is indirectly infringing by way of inducing
infringement by others and/or contributing to the infringement by others of the '570
Patent in the State of Texas, in this judicial district, and elsewhere in the United States,
by, among other things, making, using, importing, offering for sale, and/or selling,
without license or authority, products for use in systems that fall within the scope of one
or more claims of the '570 Patent. Such products include, without limitation, one or more

of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '570 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '570 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '570 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '570 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '570 Patent under 35 U.S.C. § 271.

50.    Defendant's acts of infringement of the '570 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '570 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

51.    On information and belief, the infringement of the '570 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '570 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '570 Patent by operation of law.

**COUNT 4:**

**INFRINGEMENT OF U.S. PATENT RE44,222**

52.    Blue Spike incorporates by reference the allegations in the paragraphs above.

53.    The '222 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

54.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '222 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

55.     Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '222 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '222 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

56.     The Accused Watermarking Products infringe claims of the '222 Patent, such as Claim 12 which teaches

> A system for provisioning content, comprising:
> a processor to receive content and to organize the content into a plurality of packets;
> a generator to generate at least one packet watermark associated with the content;
> a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets; and
> a transmitter to transmit at least one of the watermarked packets across a network.

Defendant's Accused Watermarking Products receive and transmit data and other content in packets (*processor to receive content and to organize the content into a plurality of packets*). *See, e.g.*, Exhibit A. Before transmitting data, the Accused Watermarking Products generate a watermark identifying a packet's priority level and place the watermark in the packet (*a generator to generate at least one packet watermark associated with the content; a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets*).  *See* Exhibit F at p.

2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

57.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '222 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '222 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '222 Patent at least as early as

the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '222 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '222 Patent under 35 U.S.C. § 271.

58.    Defendant's acts of infringement of the '222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '222 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

59.    On information and belief, the infringement of the '222 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '222 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis;

   b.    Due diligence in relation to its prior litigation with Blue Spike; and

   c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

   d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '222 Patent by operation of law.

## COUNT 5:

## INFRINGEMENT OF U.S. PATENT RE44,307

60.     Blue Spike incorporates by reference the allegations in the paragraphs above.

61.     The '307 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

62.     Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '307 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

63.     Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '307 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '307 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking

Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the

Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said

resellers.

64.     The Accused Watermarking Products infringe claims of the '307 Patent, such as

Claim 1 which teaches

> A process for provisioning a stream of data, comprising:
>     receiving a stream of data;
>     organizing the stream of data into a packet flow
>         comprising a plurality of packets;

> generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
>
> combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
>
> provisioning at least one of the watermarked packets across a network.

The Accused Watermarking Products generate a watermark identifying a packet and place the watermark in the packet (*a generator to generate at least one packet watermark associated with the content; a packager to combine the generated packet watermark with a packet*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly."). The Accused Watermarking Products then transmit the resulting packets (*a transmitter to transmit at least one of the watermarked packets across a network*). *See, e.g.*, Exhibit A.

65.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '307 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '307 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '307 Patent under 35 U.S.C. §

271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '307 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '307 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '307 Patent under 35 U.S.C. § 271.

66.   Defendant's acts of infringement of the '307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

67.    On information and belief, the infringement of the '307 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '307 Patent, including but not limited to at least one or more of the following:

  a.    In the course of its due diligence and freedom to operate analysis;

  b.    Due diligence in relation to its prior litigation with Blue Spike; and

  c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

  d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '307 Patent by operation of law.

## COUNT 6:
## INFRINGEMENT OF U.S. PATENT 5,889,868

68.    Blue Spike incorporates by reference the allegations in the paragraphs above.

69.    The '868 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

70.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '868 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

71.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '868 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '868 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

72.     The Accused Watermarking Products infringe claims of the '868 Patent, such as Claim 9 which teaches

> A method of pre-processing a watermark message certificate comprising determining an exact length of the watermark message as it will be encoded.

The Accused Watermarking Products employ traffic shaping with marks packets with a priority marker of certain length (*determining an exact length of the watermark message*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

73.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '868 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '868 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '868 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '868 Patent under 35 U.S.C. §

271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '868 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '868 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '868 Patent under 35 U.S.C. § 271.

74.   Defendant's acts of infringement of the '868 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

75. On information and belief, the infringement of the '868 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '868 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

**COUNT 7:**

**INFRINGEMENT OF U.S. PATENT 7,095,874**

76. Blue Spike incorporates by reference the allegations in the paragraphs above.

77. The '874 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

78. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '874 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

79. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '874 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '874 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

80.     The Accused Watermarking Products infringe claims of the '874 Patent, such as Claim 1 which teaches

> An article of manufacture comprising a machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
>> pre-analyzing a digital signal to identify potential watermarking locations within the digital signal, which potential watermarking locations are suitable for embedding one or more bits of a watermark message;
>> pre-processing a watermark message to determine an exact length of the watermark message to be embedded within the digital signal based on the preanalyzing step; and
>> embedding the exact length of the watermark message into the digital signal using the locations identified by the pre-analyzing step.

The Accused Watermarking Products identify potential locations to mark a packet with a traffic-shaping marker of certain length, and then embed the mark in that position (*pre-analyzing a digital signal to identify potential watermarking locations within the digital signal, which potential watermarking locations are suitable for embedding one or more bits of a watermark message; pre-processing a watermark message to determine an exact length of the watermark message to be embedded within the digital signal based on the preanalyzing step; and embedding the exact length of the watermark message into the digital signal using the locations identified by the pre-analyzing step*). *See* Exhibit F at

p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

81.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '874 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '874 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '874 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '874 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '874 Patent at least as early as

the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '874 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '874 Patent under 35 U.S.C. § 271.

82.    Defendant's acts of infringement of the '874 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '874 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

83.    On information and belief, the infringement of the '874 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '874 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

## COUNT 8:

## INFRINGEMENT OF U.S. PATENT 7,409,073

84. Blue Spike incorporates by reference the allegations in the paragraphs above.

85. The '073 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

86. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '073 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

87. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '073 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '073 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

88. The Accused Watermarking Products infringe claims of the '073 Patent, such as Claim 1 which teaches

> An article of manufacture comprising a machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:

> analyzing a digital signal to identify potential watermarking locations within the digital signal, which potential watermarking locations are suitable for embedding one or more bits of a watermark message;
>
> using a watermarking key to detect the watermark message from the digital signal at the locations identified by the analyzing step

The Accused Watermarking Products identify potential locations suitable for containing a packet-priority marker and use a key to detect the watermark at those locations (*analyzing a digital signal to identify potential watermarking locations within the digital signal, which potential watermarking locations are suitable for embedding one or more bits of a watermark message; using a watermarking key to detect the watermark message from the digital signal at the locations identified by the analyzing step*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

89.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '073 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '073 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '073 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '073 Patent under 35 U.S.C. §

271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '073 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '073 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '073 Patent under 35 U.S.C. § 271.

90.   Defendant's acts of infringement of the '073 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '073 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

91.   On information and belief, the infringement of the '073 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '073 Patent, including but not limited to at least one or more of the following:

a.   In the course of its due diligence and freedom to operate analysis;

b.   Due diligence in relation to its prior litigation with Blue Spike; and

c.   Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.   The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '073 Patent by operation of law.

<strong>COUNT 9:</strong>

<strong>INFRINGEMENT OF U.S. PATENT 7,647,502</strong>

92.   Blue Spike incorporates by reference the allegations in the paragraphs above.

93.   The '502 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

94.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '502 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

95.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '502 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '502 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking

Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the

Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said

resellers.

96.     The Accused Watermarking Products infringe claims of the '502 Patent, such as

Claim 1 which teaches

> A method for encoding at least one watermark in a
> content signal, comprising:
>> predetermining a number of bits in the content
>> signal to be encoded, based on at least one of a
>> fixed length key and signal characteristics of
>> the content signal; and
>> encoding the watermark in the predetermined
>> bits.

The Accused Watermarking Products identify potential locations to encode a signal with

a packet-priority marker of certain length, and then encode the marker in those bits

(*method for encoding at least one watermark in a content signal; predetermining a

number of bits in the content signal to be encoded, based on at least one of a fixed length

key and signal characteristics of the content signal; and encoding the watermark in the

predetermined bits*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the

fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure

that bandwidth management and traffic shaping algorithms for voice and data to [*sic*]

work properly.").

97.     Defendant has been and now is indirectly infringing by way of inducing

infringement by others and/or contributing to the infringement by others of the '502

Patent in the State of Texas, in this judicial district, and elsewhere in the United States,

by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '502 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '502 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '502 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '502 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '502 Patent by actively inducing infringement

and/or is liable as contributory infringer of one or more claims of the '502 Patent under 35 U.S.C. § 271.

98.    Defendant's acts of infringement of the '502 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '502 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

99.    On information and belief, the infringement of the '502 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '502 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '868 Patent by operation of law.

## COUNT 10:
## INFRINGEMENT OF U.S. PATENT 7,770,017

100.   Blue Spike incorporates by reference the allegations in the paragraphs above.

101.   The '017 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

102.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '017 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

103.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '017 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '017 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

104.   The Accused Watermarking Products infringe claims of the '017 Patent, such as Claim 1 which teaches

> An article of manufacture for authorized distribution of multimedia content comprising a non-transitory machine-readable medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed results in the processing comprising:
>> receiving at least one copy of content to be imperceptibly encoded with at least one digital watermark;
>> encoding the digital watermark into one or more locations in the content utilizing a key associated with a plurality of functions describing how the digital watermark is to be encoded and

detecting at least one digital watermark using the key.

The Accused Watermarking Products receive a signal, encode a packet-priority marker into the signal using a key, and detect the mark using the key (*receiving at least one copy of content to be imperceptibly encoded with at least one digital watermark; encoding the digital watermark into one or more locations in the content utilizing a key associated with a plurality of functions describing how the digital watermark is to be encoded and detecting at least one digital watermark using the key*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

105. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '017 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '017 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '017 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed.

Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '017 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '017 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '017 Patent under 35 U.S.C. § 271.

106.  Defendant's acts of infringement of the '017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

107.  On information and belief, the infringement of the '017 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '017 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to its prior litigation with Blue Spike; and

c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '017 Patent by operation of law.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT 7,779,261

108.   Blue Spike incorporates by reference the allegations in the paragraphs above.

109.   The '261 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

110.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '261 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

111.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '261 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '261 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

112.    The Accused Watermarking Products infringe claims of the '261 Patent, such as Claim 1 which teaches

> A system for applying a digital watermark to a content signal, the signal comprising;
>> a receiver for receiving at least one digital watermark and at least one key comprising information describing where in the content signal the at least on digital watermark is to be encoded;
>> an encoder for encoding the at least one digital watermark into the content signal according to the at least one key to produce at least one watermarked content signal; and
>> a decoder for detecting and/or decoding the at least one digital watermark from a watermarked content signal using the at least one key.

The Accused Watermarking Products receive a signal and encode its packets with traffic-shaping priority markers in certain locations (*a receiver for receiving at least one digital watermark and at least one key comprising information describing where in the content signal the at least on digital watermark is to be encoded; an encoder for encoding the at least one digital watermark into the content signal according to the at least one key to produce at least one watermarked content signal*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly."). The Accused Watermarking Products also decode the marker from the signal based on the key (*a decoder for detecting and/or decoding the at least one digital watermark from a watermarked content signal using the at least one key*). *See id.*

113. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '261 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '261 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '261 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '261 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '261 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has

continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '261 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '261 Patent under 35 U.S.C. § 271.

114.  Defendant's acts of infringement of the '261 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '261 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

115.  On information and belief, the infringement of the '261 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '261 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '261 Patent by operation of law.

## COUNT 12:
## INFRINGEMENT OF U.S. PATENT 7,913,087

116.  Blue Spike incorporates by reference the allegations in the paragraphs above.

117. The '087 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

118. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

119. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '087 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '087 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

120. The Accused Watermarking Products infringe claims of the '087 Patent, such as Claim 6 which teaches

> A process for decoding a plurality of digital watermarks using an encoding level and a key, comprising:
> > providing a digital signal encoded with a plurality of digital watermarks;
> > providing at least one key for decoding digital watermarks;
> > determining an encoding level; and
> > decoding at least two of the plurality of digital watermarks encoded in the digital signal at

> substantially the same encoding level based
> on the at least one key.

The Accused Watermarking Products transmit signals encoded with watermarks such as that indicate packet priority (*providing a digital signal encoded with a plurality of digital watermarks*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly."). The Accused Watermarking Products use a key to decode the marks, which determine a priority level for the signal (*providing at least one key for decoding digital watermarks; determining an encoding level; decoding at least two of the plurality of digital watermarks encoded in the digital signal at substantially the same encoding level based on the at least one key*). *See id.*

121. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '087 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '087 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '087 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re*

*Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed.

Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011

WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and

contributes to the infringement of its customers. Defendant also induces and contributes

to the infringement of its partners and resellers who use, test, and demonstrate the

infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe

and/or to whose infringement Defendant contributes are the end users of the Accused

Watermarking Products. Defendant had knowledge of the '087 Patent at least as early as

the service of this complaint. Defendant has known that the Accused Watermarking

Products infringe the Patents-in-Suit, are especially made and adapted to infringe the

Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has

continued to induce its customers and partners to infringe. Thus, Defendant is liable for

infringement of one or more claims of the '087 Patent by actively inducing infringement

and/or is liable as contributory infringer of one or more claims of the '087 Patent under

35 U.S.C. § 271.

122.  Defendant's acts of infringement of the '087 Patent have caused damage to Blue

Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which

there is no adequate remedy at law, warranting an injunction from the Court.

123.  On information and belief, the infringement of the '087 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '087 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '087 Patent by operation of law.

## COUNT 13:
## INFRINGEMENT OF U.S. PATENT 7,953,981

124.  Blue Spike incorporates by reference the allegations in the paragraphs above.

125.  The '981 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

126.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

127.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '981 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '981 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking

Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the

Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said

resellers.

128.    The Accused Watermarking Products infringe claims of the '981 Patent, such as

Claim 22 which teaches

> A digital watermarking system, comprising:
> a receiver for receiving a signal;
> an analyzer for determining locations in the
> signal comprising candidate bits; and
> a watermark message generator for generating at
> least one watermark message wherein a
> generated watermark message is associated
> with at least one candidate bit determined in
> the analyzing step.

The Accused Watermarking Products receive a signal, analyze it for potential locations to

encode a signal with a traffic-shaping priority marker, and then encode the marker in

those bits (*method for encoding at least one watermark in a content signal;*

*predetermining a number of bits in the content signal to be encoded, based on at least*

*one of a fixed length key and signal characteristics of the content signal; and encoding*

*the watermark in the predetermined bits*). *See* Exhibit F at p. 2 ("A traffic-shaping system

routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is

required to ensure that bandwidth management and traffic shaping algorithms for voice

and data to [*sic*] work properly.").

129. Defendant has been and now is indirectly infringing by way of inducing

infringement by others and/or contributing to the infringement by others of the '981

Patent in the State of Texas, in this judicial district, and elsewhere in the United States,

by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '981 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '981 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '981 Patent by actively inducing infringement

and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. § 271.

130.  Defendant's acts of infringement of the '981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

131.  On information and belief, the infringement of the '981 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '981 Patent, including but not limited to at least one or more of the following:

     a.     In the course of its due diligence and freedom to operate analysis;

     b.     Due diligence in relation to its prior litigation with Blue Spike; and

     c.     Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

     d.     The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '981 Patent by operation of law.

## COUNT 14:
## INFRINGEMENT OF U.S. PATENT 7,987,371

132.  Blue Spike incorporates by reference the allegations in the paragraphs above.

133.  The '371 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

134.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '371 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

135.  Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '371 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '371 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

136.  The Accused Watermarking Products infringe claims of the '371 Patent, such as Claim 27 which teaches

> An article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
>> obtaining a model for a data signal wherein the model describes watermarking parameters;
>> generating a watermark to be embedded in the data signal; and
>> embedding the generated watermark using the obtained model of the data signal to create a watermarked data signal.

Based on a traffic-shaping model that describes the priority of a signal, the Accused Watermarking Products generate a marker and encode the marker in the signal (*obtaining a model for a data signal wherein the model describes watermarking parameters; generating a watermark to be embedded in the data signal; and embedding the generated watermark using the obtained model of the data signal to create a watermarked data signal*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.")

137. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '371 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '371 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '371 Patent.   By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '371 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011

WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '371 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '371 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '371 Patent under 35 U.S.C. § 271.

138.  Defendant's acts of infringement of the '371 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '371 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

139.  On information and belief, the infringement of the '371 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '371 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.      Due diligence in relation to its prior litigation with Blue Spike; and

c.      Due diligence in relation to its prior litigation with Blue Spike, C.A. No.
6:16-cv-271-RWS-JDL; and

d.      The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '371
Patent by operation of law.

## COUNT 15:
## INFRINGEMENT OF U.S. PATENT 7,991,188

140.   Blue Spike incorporates by reference the allegations in the paragraphs above.

141.   The '188 Patent is valid, enforceable, and was duly and legally issued by the United

States Patent and Trademark Office.

142.   Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '188 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

143.    Defendant has been and now is directly infringing by, among other things,

practicing all the steps of the '188 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps

of the '188 Patent. Specifically, Defendant imports the Accused Watermarking Products

into the United States, operates a website that offers for sale the Accused Watermarking

Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the

Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

144.    The Accused Watermarking Products infringe claims of the '188 Patent, such as Claim 19 which teaches

> A method of digital watermarking a signal comprising:
>> at least one processor for performing the following steps;
>> identifying locations in the signal which locations are suitable for encoding one or more watermark bits based on at least one predetermined criterion;
>> selecting a watermark message based on the identification step; and
>> encoding the watermark message using the locations identified in the identification step.

The Accused Watermarking Products use a processor to identify potential locations to mark a signal with a marker indicating signal priority, and then embed the mark in that position (*identifying locations in the signal which locations are suitable for encoding one or more watermark bits based on at least one predetermined criterion; selecting a watermark message based on the identification step; and encoding the watermark message using the locations identified in the identification step*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

145. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '188 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling,

without license or authority, products for use in systems that fall within the scope of one or more claims of the '188 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '188 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '188 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '188 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '188 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '188 Patent under 35 U.S.C. § 271.

146.  Defendant's acts of infringement of the '188 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '188 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

147.  On information and belief, the infringement of the '188 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '188 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '188 Patent by operation of law.

## COUNT 16:
## INFRINGEMENT OF U.S. PATENT 8,121,343

148.  Blue Spike incorporates by reference the allegations in the paragraphs above.

149.  The '343 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

150.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '343 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

151.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '343 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '343 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

152.    The Accused Watermarking Products infringe claims of the '343 Patent, such as Claim 1 which teaches

> A method of detecting a watermark message comprising:
> identifying, with a processor, signal characteristics suitable for embedding one or more bits of watermark message within a signal;
> using a watermarking key to detect said watermark message from the identified signal characteristics.

The Accused Watermarking Products use a processor to identify locations where a signal is embedded with a traffic-shaping priority marker, and use a key to decode the marker (*identifying, with a processor, signal characteristics suitable for embedding one or more bits of watermark message within a signal; using a watermarking key to detect said watermark message from the identified signal characteristics*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at

p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

153. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '343 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '343 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '343 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '343 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking

Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. § 271.

154.  Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

155.  On information and belief, the infringement of the '343 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '343 Patent, including but not limited to at least one or more of the following:

    a.     In the course of its due diligence and freedom to operate analysis;

    b.     Due diligence in relation to its prior litigation with Blue Spike; and

    c.     Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.     The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '343 Patent by operation of law.

## COUNT 17:

## INFRINGEMENT OF U.S. PATENT 8,161,286

156.   Blue Spike incorporates by reference the allegations in the paragraphs above.

157.   The '286 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

158.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

159.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '286 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '286 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

160.   The Accused Watermarking Products infringe claims of the '286 Patent, such as Claim 1 which teaches

> A   method   for   decoding   digital   watermarks, comprising:
>     receiving a content signal encoded with a digital
>         watermark; and

> decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

The Accused Watermarking Products receive a signal marked with priority information, and use a key to locate the marker and decode it (*receiving a content signal encoded with a digital watermark; and decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

161. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '286 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '286 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '286 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed.

Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)   Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '286 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. § 271.

162.  Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

163.  On information and belief, the infringement of the '286 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '286 Patent, including but not limited to at least one or more of the following:

a.     In the course of its due diligence and freedom to operate analysis;

b.     Due diligence in relation to its prior litigation with Blue Spike; and

c.     Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.     The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '286 Patent by operation of law.

## COUNT 18:
## INFRINGEMENT OF U.S. PATENT 8,175,330

164.   Blue Spike incorporates by reference the allegations in the paragraphs above.

165.   The '330 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

166.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

167.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '330 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '330 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates

revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

168.    The Accused Watermarking Products infringe claims of the '330 Patent, such as Claim 2 which teaches

> A method for digital watermarking a digital signal, comprising:
>> identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and
>> embedding, using said computer, said watermark message into said digital signal at said locations.

The Accused Watermarking Products use a computer processor to identify potential locations to mark a signal with a watermark indicating signal priority, and then embed the mark in that position (*identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and embedding, using said computer, said watermark message into said digital signal at said locations*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

169.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '330 Patent. Such products include, without limitation, one or more

of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '330 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '330 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '330 Patent at least as early as the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '330 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '330 Patent under 35 U.S.C. § 271.

170.  Defendant's acts of infringement of the '330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

171.  On information and belief, the infringement of the '330 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '330 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '330 Patent by operation of law.

## COUNT 19:
## INFRINGEMENT OF U.S. PATENT 8,307,213

172.  Blue Spike incorporates by reference the allegations in the paragraphs above.

173.  The '213 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

174.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Watermarking Products, in violation of 35 U.S.C. § 271.

175.    Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '213 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '213 Patent. Specifically, Defendant imports the Accused Watermarking Products into the United States, operates a website that offers for sale the Accused Watermarking Products (*see* Exhibit A), has partnered with resellers to offer for sale and sell the Accused Watermarking Products in the United States (*see* Exhibit C), and generates revenue from sales of the Accused Watermarking Products to U.S. customers via said resellers.

176.    The Accused Watermarking Products infringe claims of the '213 Patent, such as Claim 1 which teaches

> An article of manufacture comprising a nontransitory medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed, result in the process comprising:
> > receiving content to be watermarked and at least one digital watermark; and
> > watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded.

The Accused Watermarking Products receive a signal and encode a DSCP marker into the signal using a key that indicates where in the signal to embed the marker (*receiving content to be watermarked and at least one digital watermark; and watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded*). *See* Exhibit F at p. 2 ("A traffic-shaping system routes traffic via the

fastest path every time"); Exhibit G at p. 16 ("The 25% additional is required to ensure that bandwidth management and traffic shaping algorithms for voice and data to [*sic*] work properly.").

177. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Watermarking Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Watermarking Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibit C.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Watermarking Products. Defendant had knowledge of the '213 Patent at least as early as

the service of this complaint. Defendant has known that the Accused Watermarking Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. § 271.

178.  Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

179.  On information and belief, the infringement of the '213 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '213 Patent, including but not limited to at least one or more of the following:

a.   In the course of its due diligence and freedom to operate analysis;

b.   Due diligence in relation to its prior litigation with Blue Spike; and

c.   Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.   Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

e.   The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '213 Patent by operation of law.

## COUNT 20:
## INFRINGEMENT OF U.S. PATENT 7,475,246

180. Blue Spike incorporates by reference the allegations in the paragraphs above.

181. The '246 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

182. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '246 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Secure Server Products, in violation of 35 U.S.C. § 271.

183.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '246 Patent. Specifically, Defendant imports the Accused Secure Server Products into the United States, has partnered with resellers to offer for sale and sell the Accused Secure Server Products in the United States (*see*, *e.g.*, Exhibits D, M & N), and generates revenue from sales of the Accused Secure Server Products to U.S. customers via said resellers.

184.   For instance, the Accused Secure Server Products infringe claim 17 of the '246 Patent which teaches

> A method for creating a secure environment for digital content for a consumer, comprising the following steps:

> sending a message indicating that a user is requesting a copy of a content data set;
>
> retrieving a copy of the requested content data set;
>
> embedding at least one robust open watermark into the copy of the requested content data set, said watermark indicating that the copy is authenticated;
>
> embedding a second watermark into the copy of the requested content data set, said second watermark being created based upon information transmitted by the requesting user;
>
> transmitting the watermarked content data set to the requesting consumer via an electronic network;
>
> receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user;
>
> extracting at least one watermark from the transmitted watermarked content data set;
>
> permitting use of the content data set if the LCS determines that use is authorized; and
>
> permitting use of the content data set at a predetermined quality level, said predetermined quality level having been set for legacy content if the LCS determines that use is not authorized.

Defendant's Accused Secure Server Products allow playback, upon request and proper authorization, of secured content via Netflix and other streaming services (*digital content for a consumer*; *sending message; retrieving a copy of the requested content; transmitting the watermarked content data set; receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user; extracting at least one watermark; permitting use of the content data set if the LCS determines that it is authorized*). (*See, e.g.*, Exhibits D & J).

185. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '246 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '246 Patent. Such products include, without limitation, one or more of the Accused Secure Server Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '246 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Secure Server Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Exhibits D, M & N).  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Secure Server Products. Defendant had knowledge of the '246 Patent at least as early as the service of this complaint. Defendant has known that the Accused Secure Server Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '246 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '246 Patent under 35 U.S.C. § 271.

186.  Defendant's acts of infringement of the '246 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

187.  On information and belief, the infringement of the '246 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '246 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '246 Patent by operation of law.

## COUNT 21:
## INFRINGEMENT OF U.S. PATENT 8,171,561

188.  Blue Spike incorporates by reference the allegations in the paragraphs above.

189.  The '561 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

190.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '561 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Secure Server Products, in violation of 35 U.S.C. § 271.

191.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '561 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '561 Patent. Specifically, Defendant imports the Accused Secure Server Products into the United States, has partnered with resellers to offer for sale and sell the Accused Secure Server Products in the United States (*see*, *e.g.*, Exhibits D, M & N), and generates revenue from sales of the Accused Secure Server Products to U.S. customers via said resellers.

192.   For instance, the Accused Products infringe claim 9 of the '561 Patent which teaches

> A method for using a local content server (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data; an LCS domain processor for processing digital data; and an LCS identification code uniquely associated with said LCS, said method comprising:
>> said LCS storing in said LCS storage unit a plurality of rules for processing a data set;
>> said LCS receiving via said communications port a first data set that includes data defining first content;
>> said LCS using said domain processor to determine from inspection of said first data set for a watermark, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
>> said LCS using said first data set status value to determine which of a set of rules to apply to process
>> said first data set prior to storage of a processed second data set resulting from processing of said first data set, in said LCS storage unit;
>> said LCS determining, at least in part, from rights associated with a user identification associated with

> a prompt received by said LCS for said first content,
> a quality level at which to transmit said first
> content, wherein said quality level is one of at least
> unsecure, secure, and legacy; and
>
> wherein a quality level of legacy means that said first
> content does not include said watermark.

Defendant's Accused Secure Server Products allow playback of secured content via Netflix and other streaming services (*a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; LCS inspecting data set for watermark and determining ... unsecure, secure, legacy; wherein a quality level of legacy means that said first content does not include said watermark*). (*See, e.g.*, Exhibits D & J).

193. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '561 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '561 Patent. Such products include, without limitation, one or more of the Accused Secure Server Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '561 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '561 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Secure Server Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011

WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see*, *e.g.*, Exhibits D, M & N).  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Secure Server Products. Defendant had knowledge of the '561 Patent at least as early as the service of this complaint. Defendant has known that the Accused Secure Server Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '561 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '561 Patent under 35 U.S.C. § 271.

194.  Defendant's acts of infringement of the '561 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '561 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

195.  On information and belief, the infringement of the '561 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '561 Patent, including but not limited to at least one or more of the following:

    a.     In the course of its due diligence and freedom to operate analysis;

b.      Due diligence in relation to its prior litigation with Blue Spike; and

c.      Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.      The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '561 Patent by operation of law.

## COUNT 22:
## INFRINGEMENT OF U.S. PATENT 8,739,295

196.  Blue Spike incorporates by reference the allegations in the paragraphs above.

197.  The '295 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

198.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '295 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Secure Server Products, in violation of 35 U.S.C. § 271.

199.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '295 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '295 Patent. Specifically, Defendant imports the Accused Secure Server Products into the United States, has partnered with resellers to offer for sale and sell the Accused Secure Server Products in the United States (*see*, *e.g.*, Exhibits D, M & N), and generates revenue from sales of the Accused Secure Server Products to U.S. customers via said resellers.

200.    For instance, the Accused Products infringe claim 13 of the '295 Patent which

teaches

> A method for using a local content server system (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data in non-transitory form; an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and a programmable address module programmed with an LCS identification code uniquely associated with said LCS domain processor; comprising:
>> storing, in said LCS storage unit, a plurality of rules for processing a data set;
>> receiving, via said LCS communications port, a first data set that includes data defining first content;
>> said LCS determining whether said first content belongs to a different LCS domain than said first LCS domain;
>> said LCS excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;
>> said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
>> said LCS determining, using said first data set status value, which of a set of rules to apply to process said first data set; and
>> said LCS determining, at least in part from rights associated with an identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy;
>> said LCS transmitting said first content at the determined quality level.

Defendant's Accused Secure Server Products allow playback of secured content via

Netflix and other streaming services (*a method for using a local content server with*

*communications port, storage, domain processor, and unique ID; said LCS*

*storing/receiving data sets/content; excluding from said first LCS domain said first*

*content when said LCS determines that said first content belongs to said different LCS domain; said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy*). (*See, e.g.*, Exhibits D & J).

201. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '295 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '295 Patent. Such products include, without limitation, one or more of the Accused Secure Server Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '295 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '295 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Secure Server Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality (*see, e.g.*, Exhibits D, M & N).  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the

Accused Secure Server Products. Defendant had knowledge of the '295 Patent at least as early as the service of this complaint. Defendant has known that the Accused Secure Server Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '295 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '295 Patent under 35 U.S.C. § 271.

202.  Defendant's acts of infringement of the '295 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '295 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

203.  On information and belief, the infringement of the '295 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '295 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '295 Patent by operation of law.

## COUNT 23:
## INFRINGEMENT OF U.S. PATENT 7,159,116

204. Blue Spike incorporates by reference the allegations in the paragraphs above.

205. The '116 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

206. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Trusted Transaction Products, in violation of 35 U.S.C. § 271.

207. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. Specifically, Defendant imports the Accused Trusted Transaction Products into the United States, has partnered with resellers to offer for sale and sell the Accused Trusted Transaction Products in the United States (*see*, *e.g.*, Exhibits D & E), and generates revenue from sales of the Accused Trusted Transaction Products to U.S. customers via said resellers.

208. The Accused Trusted Transaction Products infringe claims of the '116 Patent, such as Claim 14 which teaches

> A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:

> means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;
>
> a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
>
> a means for verifying an agreement to transact between the parties.

Defendant's Accused Trusted Transaction Products include certain Smart TVs that allow playback of Netflix and other streaming services, and certain laptops having a Trusted Platform Module (TPM). Netflix uses a digital rights management system called PlayReady, which like a TPM, is method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys (*conducting a trusted transactions between at least two parties [by using a] means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties [and] a steganographic cipher for generating said unique identification information ... governed by ... a predetermined key*). *See* Exhibit J at p. 4 ("PlayReady secures content by encrypting data files. … In order to decrypt these data files, a digital key is required."); Exhibit K at p. 5 ("TPM offers data protection by using secret encryption keys. … By storing the encryption key in TPM instead, the data is more securely protected."); Exhibit L ("The TPM is an embedded security chip that stores login information and passwords on the motherboard instead of in the PC memory, so data cannot be accessed or seen by anyone but an authorized user. So not only does it encrypt sensitive data, it essentially hides the key to the vault storing the information.");

Exhibit O ("The Trusted Platform Module (TPM) is a secure storage chip. It is used to store unique Public Key Infrastructure (PKI) key pairs and credentials. PKI is a commonly used method of data encryption in technological security.").

209. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Trusted Transaction Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Trusted Transaction Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibits D & E.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Trusted Transaction Products. Defendant had knowledge of the '116 Patent at

least as early as the service of this complaint. Defendant has known that the Accused Trusted Transaction Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271.

210.  Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

211.  On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to its prior litigation with Blue Spike; and

    c.    Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

    d.    The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

## COUNT 24:

## INFRINGEMENT OF U.S. PATENT 8,538,011

212.  Blue Spike incorporates by reference the allegations in the paragraphs above.

213.  The '011 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

214.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Trusted Transaction Products, in violation of 35 U.S.C. § 271.

215.   Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '011 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. Specifically, Defendant imports the Accused Trusted Transaction Products into the United States, has partnered with resellers to offer for sale and sell the Accused Trusted Transaction Products in the United States (*see*, *e.g.*, Exhibits D & E), and generates revenue from sales of the Accused Trusted Transaction Products to U.S. customers via said resellers.

216.   The Accused Trusted Transaction Products infringe claims of the '011 Patent, such as Claim 36 which teaches

> A device for conducting trusted transactions between at
> least two parties, comprising:
>     a steganographic cipher;
>     a controller for receiving input data or outputting
>        output data; and
>     at least one input/output connection,

wherein the device has a device identification code stored in the device;

a steganographically ciphered software application;

wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization;

wherein said device is configured to steganographically cipher both value-added information and at least one value-added component associated with said value-added information;

wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection.

Defendant's Accused Trusted Transaction Products include certain smart TVs that allow playback of Netflix and other streaming services, and certain laptops having a Trusted Platform Module (TPM). Netflix uses a digital rights management system called PlayReady, which like a TPM, is method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys (*conducting trusted transactions between at least two parties [by using] a device identification code stored in the device … a steganographically ciphered software application; wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization; wherein said device is configured to steganographically cipher both value-added information and at least one value-added component associated with said value-added information; wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection*). *See* Exhibit J at p. 4 ("PlayReady secures content by encrypting data files. … In order to decrypt these data

files, a digital key is required."); Exhibit K at p. 5 ("TPM offers data protection by using secret encryption keys. … By storing the encryption key in TPM instead, the data is more securely protected."); Exhibit L ("The TPM is an embedded security chip that stores login information and passwords on the motherboard instead of in the PC memory, so data cannot be accessed or seen by anyone but an authorized user. So not only does it encrypt sensitive data, it essentially hides the key to the vault storing the information."); Exhibit O ("The Trusted Platform Module (TPM) is a secure storage chip. It is used to store unique Public Key Infrastructure (PKI) key pairs and credentials. PKI is a commonly used method of data encryption in technological security.").

217. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '011 Patent. Such products include, without limitation, one or more of the Accused Trusted Transaction Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '011 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Trusted Transaction Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-

cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers. Defendant also induces and contributes to the infringement of its partners and resellers who use, test, and demonstrate the infringing functionality. (*See* Exhibits D & E.)  Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Trusted Transaction Products. Defendant had knowledge of the '011 Patent at least as early as the service of this complaint. Defendant has known that the Accused Trusted Transaction Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271.

218.  Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

219.  On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following:

a.  In the course of its due diligence and freedom to operate analysis;

b.     Due diligence in relation to its prior litigation with Blue Spike; and

c.     Due diligence in relation to its prior litigation with Blue Spike, C.A. No. 6:16-cv-271-RWS-JDL; and

d.     The filing of this additional complaint.

On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)     enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)     enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian N. Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

   /s/ Randall T. Garteiser   
Randall T. Garteiser