**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>TOSHIBA AMERICA INFORMATION SYSTEMS, INC. & TOSHIBA CORPORATION<br><br>                Defendants. | Case No. 6:17-cv-00053-RWS-KNM |

**DEFENDANTS TOSHIBA AMERICA INFORMATION SYSTEMS, INC.
AND TOSHIBA CORPORATION'S MOTION TO TRANSFER**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FORUM SELECTION CLAUSES SHOULD BE ENFORCED .......................................... 2

III. THE CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER THE 2005 AGREEMENT ...................................................................... 4

    A. The Parties Selected N.D. Cal. As The Forum For This Dispute ...................................... 4

    B. This Case Arises Out Of The Same Subject Matter Of The 2004 Action ......................... 5

    C. Transfer Is Also Required Because Blue Spike Asserts Infringement Of One Of The Patents Asserted In The 2004 Action....................................................................................... 7

IV. THE CASE SHOULD ALSO BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER A TRADITIONAL §1404 ANALYSIS.......................................... 7

    A. Legal Standard ................................................................................................................... 8

    B. Blue Spike Could Have Filed This Action in the Northern District of California ............. 9

    C. Private Interest Factors Weigh in Favor of Transfer to the Northern District of California 10

        i. The Northern District of California is More Convenient for Witnesses – Private Interest Factors 2 & 3................................................................................................................ 10

        ii. Evidence is More Accessible In the Northern District of California - Private Interest Factor 1 ................................................................................................................................... 13

        iii. Transfer to the Northern District of California Would Not Cause Any Problems - Private Interest Factor 4 ........................................................................................................... 14

    D. Public Interest Factors Support Transfer to the Northern District of California .............. 14

        i. Court Congestion .......................................................................................................... 14

        ii. Localized Interests Decided at Home ........................................................................... 15

V. CONCLUSION.................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases** **Pages**

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas, et al.*,
   134 S.Ct. 568 (2013) ................................................................................................... 2, 3, 4, 8

*Balthasar Online, Inc. v. Network Solutions, LLC*,
   654 F. Supp. 2d 546 (E.D. Tex. 2009) ..................................................................................... 9

*Blue Spike v Toshiba*,
   Case No. 2-16-cv-00703-RWS (E.D. Texas) ........................................................................... 1

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .............................................................................................. 13

*Marrinan v. Carnival Corp.*,
   No. 6:06-cv-294, 2007 WL 1006802 (E.D. Tex. March 29, 2007) .......................................... 4

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ........................................................................................ 12, 13

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
   2010 WL 3855520 (E.D. Tex. 2010) ..................................................................................... 12

*Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd.*,
   No. 4:15-cv-00821-ALM-CAN, 2016 WL 4083241 (E.D. Tex. July 8, 2016) ....................... 8

*Rovi Guides, Inc. v. Comcast Corp.*,
   No. 216CV00322JRGRSP, 2016 WL 6217201 (E.D. Tex. Oct. 25, 2016) ..................... 3, 8, 9

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ................................................................................... 8, 10, 15

*In re Verizon Bus. Network Servs. Inc.*,
   635 F.3d 559 (Fed. Cir. 2011) ................................................................................................ 12

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................................................. 12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ..................................................................................... 8, 14, 15

**Statutes**

28 U.S.C. 1391(c)(3) ..................................................................................................................... 10

28 U.S.C. 1404(a) .................................................................................................................. *passim*

Defendants Toshiba America Information Systems, Inc. and Toshiba Corporation ("Toshiba") move to transfer this action to the Northern District of California pursuant to the forum selection provision of Toshiba's 2005 agreement with Blue Spike in which the parties agreed to bring any suit on the subject matter of the instant case in the Northern District of California, and pursuant to 28 U.S.C. § 1404(a) because that forum is more convenient to the parties.

## I. INTRODUCTION

In 2004, Blue Spike, LLC's predecessors, Blue Spike, Inc. and Wistaria Trading, Inc. filed a lawsuit against Toshiba in the Southern District of Florida (the "Florida action") alleging infringement of three patents. In 2005, the parties entered into a settlement agreement (the "2005 Agreement") (Fujimoto Decl. Exh. 1) in which the Florida action was dismissed without prejudice and in which the parties agreed to a number of terms that would apply to any subsequent dispute "arising out of the same subject matter" including arising out of infringement of U.S. Patent Number 5,889,868 (the "`868 patent"). The terms and conditions of the 2005 Agreement include the requirement that any future lawsuit be filed only in the U.S. District Court for the Northern District of California. *See* Fujimoto Decl. Exh. 1, 2005 Agreement ¶ 3.

On July 1, 2016, Blue Spike filed suit against Toshiba America, Inc., a subsidiary of Toshiba Corporation, again alleging infringement of the `868 patent. *See Blue Spike v Toshiba*, Case No. 2-16-cv-00703-RWS (E.D. Texas), consolidated into Case No. 2:16-cv-00329-RWS for all purposes other than venue issues. Verance Corporation ("Verance") was a co-defendant in that case. On October 31, 2016, Verance filed a motion to dismiss or transfer venue based on the forum selection clause in the 2005 Agreement. *See* Case No. 2-16-cv-00703-RWS, Docket Index (D.I.) 42. Verance attached the 2005 Agreement to that motion. *See* Case No. 2-16-cv-00703-RWS, D.I. 42, document 42-24. Just days later, on November 4, 2016, Blue Spike filed a Notice of Voluntary Dismissal to dismiss the 2-16-cv-703 case. *See* Case No. 2:16-cv-00329-

RWS, D.I. 46. The Court dismissed the case on November 7, 2016.[1] *See* Case No. 2-16-cv-00703-RWS, D.I. 51, corrected at D.I. 54. Blue Spike certainly knew of the 2005 Agreement by the time it filed its Notice of Voluntary Dismissal.

On January 26, 2017, Blue Spike filed this suit against Toshiba Corporation and Toshiba America Information Systems, Inc. (a subsidiary of Toshiba America, Inc., which is a subsidiary of Toshiba Corporation), *alleging infringement of the `868 patent for the third time*, and further alleging infringement of 23 other patents of which nine are in the same family as the `868 patent *and are also subject to the 2005 Agreement*. Pursuant to the 2005 Agreement, Blue Spike and its outside counsel knew this case should have been filed in the Northern District of California and not in this Court.

This case should also be transferred to the Northern District of California for the convenience of witnesses, both party and non-party, who are located in or much closer to the Northern District of California. Toshiba witnesses are located in either Tokyo, Japan, where Toshiba Corporation is located, or Irvine, California, where Toshiba America Information Systems, Inc. is located. Blue Spike has also alleged Toshiba televisions infringe certain patents because the televisions have security features that are provided by various third party streaming service providers including Netflix, YouTube and Google Play. Witnesses from those third parties are located in the Northern District of California. For these reasons, transfer to the Northern District of California would ensure judicial economy is served.

## II. FORUM SELECTION CLAUSES SHOULD BE ENFORCED

28 U.S.C. 1404(a) is the appropriate way to enforce a forum-selection clause. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas, et al.*, 134 S.Ct.

---

[1] Toshiba had responded to the July 1, 2016 complaint by filing a motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. At the time, because 11 years had passed, current Toshiba personnel and outside counsel were not immediately aware of the 2005 Agreement. By the time they did learn of the 2005 Agreement, Blue Spike had voluntarily dismissed its complaint without prejudice. Nevertheless, at the time of the dismissal (November 4, 2016), Blue Spike and its counsel knew of the 2005 Agreement through the filing of Verance's Motion to Dismiss or Transfer Venue on October 31, 2016.

568, 580 (2013). In that case, the Supreme Court held:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion … must evaluate both the convenience of the parties and various public-interest considerations.
>
> * * *
>
> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. <u>The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system</u>.
>
> For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' <u>a valid forum-selection clause should be given controlling weight in all but the most exceptional cases</u>."

*Atlantic Marine,* 134 S.Ct at 581 (citations omitted)(emphasis added); *See also Rovi Guides, Inc. v. Comcast Corp.,* No. 216CV00322JRGRSP, 2016 WL 6217201 (E.D. Tex. Oct. 25, 2016) (transferring case to the Southern District of New York based on forum-selection clause in prior agreement because "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause").

Because parties bargain for forum-selection clauses, parties have expectations that they will be enforced:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain.

*Rovi Guides, Inc. v. Comcast Corp.,* No. 216CV00322JRGRSP, 2016 WL 6217201, at *3 (E.D. Tex. Oct. 25, 2016)(citations omitted).

The presence of a forum-selection clause requires an adjustment to the usual §1404(a) analysis, requiring the plaintiff to bear the burden of showing why the court should not transfer the case to the agreed-upon forum:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, <u>the plaintiff bears the burden of</u>

3

> establishing that transfer to the forum for which the parties bargained is unwarranted.

*Atlantic Marine,* 134 S.Ct at 581 (emphasis added). Further, a Court should not consider arguments about the parties private interests:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Atlantic Marine,* 134 S.Ct at 581 (emphasis added).

### III. THE CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER THE 2005 AGREEMENT

#### A. The Parties Selected N.D. Cal. As The Forum For This Dispute

In 2004, Blue Spike, Inc. and Wisteria Trading, Inc., predecessors in interest to plaintiff Blue Spike LLC, filed a lawsuit against Toshiba alleging infringement of U.S. Patent No. 5,889,868 and two other patents (the "2004 Action").[2] The parties settled in 2005, executing an agreement that governed any future related disputes (the "2005 Agreement"). *See* Fujimoto Decl. Exh. 1.[3]

The 2005 Agreement recites in part:

> "2) To the extent that the parties still have disputes arising out of the subject matter of the Pending Action including disputes as to infringement or invalidity of United States Patent No. 5,889,868; 5,905,800; and 6,552,767, or relating to Verance Corporation's digital watermarking technology (collectively, "Disputes"). The Parties agree to mediate such Disputes at a mutually agreed time prior to the filing of any lawsuit (against one or more of the Parties) relating to one or more of the Disputes.

---

[2] Blue Spike brought the 2004 lawsuit against Toshiba Corp, a defendant in this case, and against Toshiba America, Inc. and Toshiba America Consumer Products LLC. In 2011, Toshiba America Consumer Products LLC was merged into Toshiba America Information Systems, Inc. *See* Fujimoto Decl. ¶3. Toshiba America Information Systems, Inc. is a wholly owned subsidiary of Toshiba America, Inc., which is a wholly owned subsidiary of Toshiba Corporation. *See* Fujimoto Decl. ¶4.

[3] Courts can consider materials outside the pleadings, such as the 2005 Agreement, in ruling on a motion to transfer venue. *See Marrinan v. Carnival Corp.*, No. 6:06-cv-294, 2007 WL 1006802, at *6 (E.D. Tex. March 29, 2007) ("[A] court can consider materials outside the pleadings in ruling on a motion to transfer venue.").

3) In the event that the Disputes are not fully resolved at such a mediation, the Parties will in good faith discuss party appointed binding arbitration as an alternative to the filing of any lawsuit with respect to the Disputes. In the event, however, that one or more of the Parties file(s) a subsequent lawsuit with respect to the Disputes ("Subsequently Filed Lawsuit"), the Parties agree to the following terms and conditions that shall apply to the Subsequently Filed Lawsuit:

   a) <u>The Subsequently Filed Lawsuit shall be filed only in the United States District Court for the Northern District of California</u> and the Parties <u>consent to personal jurisdiction</u> in that court."

*See* Fujimoto Decl. Exh. 1, 2005 Agreement, page 2, ¶¶2-3. "Disputes" includes:

1. "disputes arising out of the same subject matter of the Pending Action";

2. "disputes as to infringement or invalidity of United States Patent Nos. 5,889,868; 5,905,800; and 6,522,767"; (the first pages of which are attached as Ex. A) [4]; *or*

3. "disputes … relating to Verance Corporation's digital watermarking technology…."

*See* Fujimoto Decl. Exh. 1, 2005 Agreement, p.2, ¶2. According to this agreement, Blue Spike was obligated to bring this case in the Northern District of California both because Blue Spike again asserts the `868 patent against Toshiba, along with nine patents that are divisionals or continuations of the `868 patent, and because this case arises out of the same subject matter as the 2004 Action. And, when they filed this action, Blue Spike and its outside counsel were fully aware of this contractual obligation and yet acted in complete disregard of it. *See* Verance Corp.'s 10/31/2016 Motion, Case No. 2-16-cv-00703-RWS, D.I. 42, document 42-24.

### B. This Case Arises Out Of The Same Subject Matter Of The 2004 Action

This case arises out of the "same subject matter" as the 2004 Action because:

- The "subject matter" of the 2004 Action was "<u>watermarking technology and services</u> used in processors, storage media and consumer products that are incorporated into digital audio and video players … made, used, sold and/or

---

[4] "Ex. __" refers to the exhibits to the Declaration of Gerard Haddad.

5

offered for sale by … Toshiba….″ See, e.g, Ex. P, 2004 Amended Complaint, ¶19 (emphasis added).

- o Likewise, according to the complaint in the instant action, the subject matter is "Defendant [Toshiba] designs, develops, manufactures and/or provides products, services and/or software applications that employ <u>watermarking technology</u> that infringes one or more claims of the Patents-In-Suit." Complaint, D.I. 1, page 8, ¶ 17.

- All three patents in the 2004 Action use the term "watermarking" in their title:
  - o Patent No. 5,889,868: "Optimization methods for the insertion, protection, and detection of digital watermarks in digitized data." Ex. O, 2004 Complaint, ¶11.
  - o Patent No. 5,905,800: "Method and system for digital watermarking." Ex. O, 2004 Complaint, ¶21.
  - o Patent No. 6,522,767: "Optimization methods for the insertion, protection, and detection of digital <u>watermarks</u> in digitized data." Ex. O, 2004 Complaint, ¶16 (Note: a typo in the 2004 Complaint and 2004 Amended Complaint lists this patent as 6,522,787, however, the correct patent number is 6,522,767). This patent is a continuation of the `868 patent. See `767 Patent, cover page, Ex. A, Related US. Application Data.
    - ▪ Likewise, <u>19 of the 24 patents</u> asserted in the instant case have the term "watermarking" in their title. See Complaint, D.I. 1, pages 2-3, ¶¶ 1 – 19.

- Nine of the asserted patents are continuations or divisionals of one of the patents asserted in the 2004 Action, the `868 patent, which is also asserted in the instant case.

6

- o Because those 9 patents are continuations or divisional of the asserted `868 patent, they share all or a substantial part of the text and figures from the `868 patent. Thus they necessarily concern the same subject matter as the `868 patent. *See* Ex. N, "Related US. Application Data," Front Page of U.S. Patent Nos. 7,095,874, 7,409,073, 8,121,343, 8,175,330, 7,953,981, 7,987,371, 7,991,188, 7,913,087, 7,647,502.

Clearly, Blue Spike was obligated to file this case in the Northern District of California because, under the first criterion in the 2005 Agreement for such disputes, this case concerns the same subject matter as 2004 Action.

### C. Transfer Is Also Required Because Blue Spike Asserts Infringement Of One Of The Patents Asserted In The 2004 Action

This case also meets the second criteria in the 2005 Agreement for cases that must be brought in the Northern District of California, specifically "disputes as to infringement or invalidity of United States Patent Nos. 5,889,868; 5,905,800; and 6,522,767":

- In the instant case, Blue Spike's complaint alleges infringement of U.S. Patent No. 5,889,868, one of the three patents asserted in the 2004 Action and specifically called out in the 2005 Agreement. Complaint, D.I. 1, p. 2 ¶ 6; p. 27 Count 6.

Therefore, because the subject matter of 19 of the 24 patents in this case is the same as the subject matter of the 2004 Action, and because the `868 patent is asserted here, Blue Spike was required under the 2005 Agreement to file this case in the Northern District of California.

### IV. THE CASE SHOULD ALSO BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER A TRADITIONAL §1404 ANALYSIS

While the forum selection clause in the 2005 Agreement is a complete justification for transferring this case, a traditional analysis of the §1404 factors provides a second, complete basis for transfer.

7

### A. Legal Standard

Under 28 U.S.C. § 1404, a district court may transfer a case to "any other district or division" where the case could have been filed "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In deciding whether to transfer a case, the Court must engage in a two-step inquiry: "first whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and the witnesses, and the interest of justice a transfer is appropriate." *Oxysure Therapeutics, Inc. v. Gemini Master Fund, Ltd.*, No. 4:15-cv-00821-ALM-CAN, 2016 WL 4083241, at *2 (E.D. Tex. July 8, 2016), report and recommendation adopted, No. 4:15-cv-821, 2016 WL 4039226 (E.D. Tex. July 28, 2016).

The Federal Circuit explained that in patent cases in the 5th Circuit, transfer is "appropriate" when the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). To determine if the venue is more convenient, the Fifth Circuit applies the "private" and "public" factors. *Id.*

> The "private" interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The "public" interest factors to be considered are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law."

*In re TS Tech USA Corp.*, 551 F.3d at 1319.

As noted above in Section II, when a forum-selection clause is present in an agreement between the litigants, the private interest factors are not considered in a §1404(a) analysis. *Atlantic Marine,* 134 S.Ct at 58; *Rovi Guides, Inc. v. Comcast Corp.,* No. 216CV00322JRGRSP,

8

2016 WL 6217201, at *2 (E.D. Tex. Oct. 25, 2016) ("a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause should not consider arguments about the parties' private interests…. As a consequence, a district court may consider arguments about public interest factors only. However, because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."). Toshiba's comments below on the private interest factors are without prejudice to its position that those factors should not be considered in light of the 2005 Agreement's forum selection clause.

### B. Blue Spike Could Have Filed This Action in the Northern District of California

To show that an action could have been filed in the proposed transferee venue, a party need only make a prima facie showing of personal jurisdiction in the transferee venue. *See Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 551 (E.D. Tex. 2009).

Under the forum selection clause of the 2005 Agreement, Toshiba consented to jurisdiction in the Northern District of California, thereby establishing both personal jurisdiction and venue in the Northern District of California. *See* Fujimoto Decl. Exh. 1, 2005 Agreement, ¶3(a). *Rovi Guides, Inc. v. Comcast Corp.*, No. 216CV00322JRGRSP, 2016 WL 6217201 at *5 (E.D. Tex. Oct. 25, 2016) (transferring case to the Southern District of New York based on forum-selection clause in prior agreement).

This case also could have been brought in the Northern District of California apart from the 2005 Agreement. Toshiba Corporation is a resident of Japan. *See* Fujimoto Decl., ¶ 7. For purposes of venue, because it is not a resident in the United States, it can be sued in any judicial district. 28 U.S.C. 1391(c)(3). Toshiba America Information Systems, Inc. is located in Irvine, California and is therefore subject to personal jurisdiction in California. *See* Fujimoto Decl., ¶ 8. Further, Toshiba America Information Systems, Inc. conducts business in the Northern District

of California.  *See* Fujimoto Decl., ¶ 8. Thus under the venue statute, Blue Spike could have filed this case the Northern District of California.  *See* 28 U.S.C. §§ 1391(c) and 1404(a).

### C. Private Interest Factors Weigh in Favor of Transfer to the Northern District of California

In addition to Blue Spike's explicit agreement to file a suit of this nature in the Northern District of California, which effectively decided the private interest factors in favor of transfer, the private interest factors independently favor a transfer of this case to the Northern District of California.  The "private" interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

#### i. The Northern District of California is More Convenient for Witnesses – Private Interest Factors 2 & 3

The Northern District of California is much more convenient for a majority of the potential witnesses in this case.

First, the Defendants are physically located in closer proximity to the Northern District of California than to this District.  Defendant Toshiba America Information Systems, Inc. ("TAIS") is located in Irvine, California.  For TAIS witnesses to travel to the Northern District of California, they would simply need to travel 11.8 miles from TAIS to the John Wayne Airport in Santa Ana, California and take a one hour flight to any of the airports in the Northern District of California.  This is compared to a nearly three hour flight to Dallas, Texas from Orange County, California followed by driving nearly one hundred miles to Tyler, Texas.

Defendant Toshiba Corporation is located in Tokyo, Japan.  The Northern District of California is a much more convenient forum for international travel by witnesses from Japan than this District.  Indeed, there are numerous direct flights from Tokyo, Japan to multiple

airports in the Northern District of California. Alternatively, travel to this District would require significantly longer flights to Dallas, Texas, followed by a nearly two hour drive to Tyler, Texas.

Likely third party witnesses would also have easier access to the Northern District of California. In its Complaint, Blue Spike accuses Toshiba televisions that are "capable of streaming secured content such as Netflix, YouTube, Google Play…." Complaint at ¶ 21. Netflix is mentioned 8 times in the Complaint, is specifically accused in five of the 24 counts of the Complaint, and is the subject of two of the exhibits attached to the complaint. See Complaint, ¶¶ 21, 185, 192, 199, 208 (twice), 216 (twice), and Exhibits P and Q to the Complaint. Netflix is both headquartered in the Northern District of California and leases 600,000 square feet there. Ex. B, p. 13.[5]

In addition to Netflix, most of the other companies mentioned in paragraph 21 of the Complaint are located in, or are in close proximity to, the Northern District of California:

• Google, owned by Alphabet Inc., created the accused Google Play application and owns YouTube (also accused). Alphabet is headquartered in Mountain View, California.[6] Ex. C, pp. 3, 18.

• HBO, the creator of the accused HBO Go product, is owned by Time Warner, Inc. and has offices in Santa Monica, California. See Ex. D, pp. 9, 30.

---

[5] According to Netflix's 2016 annual report, "Our corporate headquarters are located in Los Gatos, California and consist of leased space aggregating approximately 600,000 square feet. In the United States, we lease other offices in various locations, including Beverly Hills, California for content acquisition, marketing and general and administrative operations and Fremont, California for our DVD operations." See Ex. B, page 13.

[6] According to Alphabet's annual report, "Alphabet is a collection of businesses -- the largest of which, of course, is Google." See Ex. C, page 2.
According to Alphabet's annual report, "Google's core products such as Search, Android, Maps, Chrome, YouTube, Google Play, and Gmail each have over one billion monthly active users." See Ex. C, page 3.
According to Alphabet's 2016 annual report, "Our headquarters are located in Mountain View, California. We also own and lease office and building space in the surrounding areas near our headquarters, which in the aggregate (including our headquarters) represent approximately 7.86 million square feet of office/building space and approximately forty-five acres of developable land to accommodate anticipated future growth." See Ex. C, page 18.

- FoxNow, created by Fox Broadcasting, which has offices in Los Angeles, California.

See Ex. E, Ex. F p. 11.

And, if the screen shot on the first page of Blue Spike's Complaint is a reference to another accused third party provider (Pandora), the same rationale applies because Pandora is an Oakland, California based company. See Ex. G, pp. 12, 36. The fact that there are numerous potential third-party witnesses within the subpoena power of the Northern District of California, but not within the Eastern District of Texas, further compels transfer. *See FutureVision.com, LLC,* 2013 WL 5496810, at *4 (granting transfer where only one potential witness was located in the transferor forum and several known witnesses were within the subpoena power of the proposed transferee forum); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, 2010 WL 3855520, at *4-5 (E.D. Tex. 2010) (granting transfer where witnesses were subject to compulsory process in the transferee court, but not in the Eastern District of Texas). Indeed, Toshiba does not know of a single fact witness located in Texas. *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1199 (Fed. Cir. 2009) (directing transfer where none of the identified key witnesses reside in Texas).

There is a stark difference between the convenience and fairness the Northern District of California would provide as a venue, as compared to this District. *See In re Volkswagen AG,* 371 F.3d 201, 204-205 (5th Cir. 2004)("[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"); *In re Verizon Bus. Network Servs. Inc.,* 635 F.3d 559, 561 (Fed. Cir. 2011) (directing transfer in part because of "a stark contrast in convenience and fairness with regard to the identified witnesses" between the transferor and transferee forums).

In addition to shorter travel time and cost, because those witnesses would be in or near the Northern District, they would be away from their jobs and families for less time. Without

doubt, the Northern District of California is more convenient for the Defendants *and* third party witnesses than this District, and therefore this factor weighs strongly in favor of a transfer.

### ii. Evidence is More Accessible In the Northern District of California - Private Interest Factor 1

The majority of the proof in this case resides closer to the Northern District of California than to this District. *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1199 (Fed. Cir. 2009) (district court erred in not transferring case where most evidence resided in transferee district or internationally and none of the relevant evidence was located in Texas); *In re Genentech, Inc.,* 566 F.3d 1338, 1346 (Fed. Cir. 2009) (directing transfer where keeping the case in Texas would "impose a significant and unnecessary burden on the petitioners to transport documents").

TAIS' sales records and marketing documents for the accused products in the United States reside in Irvine, CA – as do its employees. Fujimoto Decl., ¶5. Any evidence or witnesses pertaining to the technical functionality of the accused products other than technical functionality provided by third parties, or the licensing of the technology within the accused products, resides at Toshiba Corporation in Tokyo, Japan. Fujimoto Decl., ¶6. The evidence in Japan and Southern California is more accessible from the Northern District of California than from the Eastern District of Texas. Indeed, no evidence resides in the Eastern District of Texas.

The Federal Circuit has repeatedly recognized that the vast majority of evidence in patent infringement cases typically comes from the defendant/accused infringer and "[c]onsequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *See In re Nintendo Co.,* 589 F.3d at 1199 (quotation omitted). As such, in this patent infringement action the majority of the evidence will come from TAIS' headquarters in Irvine, California and from Toshiba Corporation's Tokyo, Japan headquarters – both of which are closer to the Northern District of California than to this District.

Lastly, as discussed above – evidence pertaining to the third party technologies and witnesses accused in the Complaint (e.g., Netflix, GooglePlay and YouTube) resides in the

Northern District of California. Because much of the evidence in this case is more readily accessible to the Northern District of California, this factor weighs in favor of transfer.

      iii. <u>Transfer to the Northern District of California Would Not Cause Any Problems - Private Interest Factor 4</u>

Because this lawsuit was recently filed, no practical problems exist that would deter this Court from transferring this litigation to the Northern District of California. Discovery has not yet begun, and could easily commence in a different forum. Further, this Court has not previously considered any of the substantive issues concerning the asserted patent, and no claim construction order for any of the patents has been entered.

The private interest factors, while superseded by the parties' forum selection agreement, all weigh heavily in favor of a transfer of this case to the Northern District of California.

### D. Public Interest Factors Support Transfer to the Northern District of California

The public interest factors include: (i) the local interest in having cases decided in home forums; (ii) court congestion; (iii) potential conflict of laws; and (iv) the proposed transferee court's familiarity with the relevant law. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 315. This action arises out of federal patent law, so no conflict of laws or familiarity with patent law analysis is required as federal courts are equally qualified to handle such matters; these factors are neutral. The remaining factors weigh in favor of transfer to the Northern District of California.

      i. <u>Court Congestion</u>

The Eastern District of Texas has more cases per judge than the Northern District of California and accordingly this factor weighs in favor of transfer to the Northern District of California. In 2016, the Northern District of California had 9,811 cases spread across 21 United States district judges, an average of 467 cases per judge. Exs. J, L. In contrast, this District had a total of 4,875 cases spread over seven United States district judges, an average of 696 cases per

judge. Exs. K, M. Therefore the average case load for an Eastern District of Texas judge is 49% higher than it is for a judge in the Northern District of California. The much lower case load per judge in the Northern District of California favors transfer.

> ii. Localized Interests Decided at Home

Because the accused Toshiba products are sold nationwide, this District does not have a specialized interest in hearing the case. It is well settled that where accused products are accessible throughout the country, "the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue." *In re TS Tech USA Corp.*, 551 F.3d at 1321; *see also In re Volkswagen of Am., Inc.*, 545 F.3d at 318 (argument that a jurisdiction has an interest in a case simply because a product is available in that district "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture").

Further, Blue Spike witnesses have little, if any, connection with this forum other than being registered as an LLC in Texas. Plaintiff's only employee, Mr. Moskowitz, resides in Florida. *See* Exs. H, I (face of newest asserted patent and copy of public database showing Moskowitz's address). There is also no indication that Blue Spike has any customers in Texas. Because there is no localized interest in this Court deciding the issues in this case, this favor weighs in favor of a transfer.

The public interest factors weigh in favor of a transfer of this case to the Northern District of California.

**V. CONCLUSION**

For the foregoing reasons, this Court should transfer this case to the Northern District of California pursuant to the mandatory forum-selection clause in the 2005 Agreement, and because under 28 U.S.C. 1404(a), that district is a more convenient forum for the party and non-party witnesses and evidence.

Dated: May 19, 2017          By: /s/ Gerard A. Haddad (with permission)

                           Melissa R. Smith
                           Texas Bar No. 24001351
                           Melissa@gillamsmithlaw.com
                           GILLAM & SMITH, LLP
                           303 South Washington Avenue
                           Marshall, Texas 75670
                           Telephone: (903) 934-8450
                           Facsimile: (903) 934-9257

                           Jeffrey K. Sherwood
                           Texas Bar No. 24009354
                           JSherwood@BlankRome.com
                           BLANK ROME LLP
                           1825 Eye Street, NW
                           Washington, DC 20006
                           Telephone: (202) 420-2200
                           Facsimile: (202) 420-2201

                           Gerard A. Haddad
                           New York Bar No. 2731271
                           GHaddad@BlankRome.com
                           BLANK ROME LLP
                           405 Lexington Avenue
                           New York, NY 10174-0208
                           Telephone: (212) 885-5135
                           Telephone: (917) 591-6921

                           Attorneys for Defendants
                           Toshiba America Information Systems, Inc., and
                           Toshiba Corporation

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), I hereby certify that on May 15, 2017, I conducted a telephonic meet-and-confer with Randall Garteiser, counsel for Blue Spike, LLC, to discuss whether Blue Spike will oppose Toshiba's Motion to Transfer Venue. Blue Spike's counsel indicated that they needed additional time to consider whether it will oppose the motion. On May 17, I conducted a second telephonic meet-and-confer with Mr. Garteiser during which we again discussed Toshiba's motion to transfer the case and whether Blue Spike opposed the motion. The parties were unable to come to agreement at that time but agreed to speak again. On May 18, I conducted a third telephonic meet-and-confer with Mr. Garteiser during which we again discussed Toshiba's motion to transfer, and again the parties could not come to agreement. The parties also exchanged several emails over the four days of this meet-and-confer process stating their positions. The discussions as to whether the case should be transferred to the Northern District of California have ended in an impasse.

/s/ Gerard A. Haddad
Gerard A. Haddad

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/ Melissa R. Smith
Melissa R. Smith